# IN THE COURT OF APPEALS OF IOWA

No. 17-1869
Filed February 7, 2018

**IN THE INTEREST OF M.B., A.B., and A.T.,**
**Minor Children,**

**J.B., Mother,**
 Appellant.

_____

 Appeal from the Iowa District Court for Linn County, Barbara H. Liesveld, District Associate Judge.

 A mother seeks reunification with her three children after the juvenile court terminated her parental rights. **AFFIRMED**.

 Kathryn E. Davis, Cedar Rapids, for appellant mother.

 Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

 Kimberly A. Opatz of Linn County Advocate, Cedar Rapids, guardian ad litem for minor children.

 Considered by Vogel, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

This case involves three children—eight-year-old M.B., six-year-old A.B., and three-year-old A.T. In 2014, all three suffered physical abuse and death threats from Ronald, the putative father of the two younger children and the paramour of their mother, Justine. Since that abuse occurred, Justine has not consistently provided the nurturing and support these children badly need to heal and grow. After years of receiving services from the Iowa Department of Human Services (DHS), Justine is still overwhelmed when called to care for all three children at the same time and continues to expose the children to potentially dangerous people. The juvenile court terminated Justine's parental rights in November 2017.[1] After our review of the record,[2] we find the termination complied with the statutory grounds and was in the best interests of the children. *See* Iowa Code § 232.116(1), (2), (3) (2017).

## I. Facts and Prior Proceedings

This family's involvement with the DHS dates back to 2009 when Ronald reportedly strangled Justine in the presence of another child. In March 2011, the DHS confirmed a child-abuse allegation involving the parents' use of illegal drugs in the home. Then in November 2014, a frightening event resulted in the adjudication of M.B., A.B., and A.T. as children in need of assistance (CINA).

---

[1] The order also terminated the parental rights of Ronald and Daniel, who is M.B.'s father. Neither father appeals.

[2] Our review is de novo. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). We are not bound by the juvenile court's factual findings, but we give them weight, especially when witness credibility is key to the outcome. *See id.* Proof must be clear and convincing, meaning there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

Ronald threatened to kill Justine and all three children. He covered M.B.'s mouth so she couldn't breathe; he waved a metal pipe over his son A.B., saying "I bet this would go through [the boy's] skull"; and he forced a towel over baby A.T.'s face, saying, "[Y]ou take care of that bitch." Ronald was incarcerated for child endangerment until July 2015. The DHS returned the children to Justine's care on her word she would not reunite with Ronald.

But in September 2015, the DHS confirmed Ronald was back in the home and had physically abused M.B., leaving a bruise on her thigh. Justine testified at the termination hearing that M.B. lied about what happened. Ronald was charged with violating the no-contact order. A few days later, M.B. told staff at her school that her family was moving away. Ronald was with Justine when the mother picked up M.B. from school. Worried about the safety of the children, the DHS initiated another removal and a second CINA adjudication.

From October 2015 through June 2017, Justine made some strides toward reunification. She obtained an apartment with federal housing assistance for low-income families, though she did not consistently stay there. Justine instead chose to spend two to three nights per week at her mother's home. But Justine's mother lost custody of Justine as a child and is not approved for contact with the grandchildren. Justine held four different jobs during the pendency of the case; she was employed at the time of the termination hearing.

Justine progressed in her visitation with the children, moving from fully supervised to semi-supervised to unsupervised to overnight sessions. In early June 2017, Justine had extended visitation of four overnight stays. Justine complained to the foster parents and the DHS social worker that caring for all three

children at once was "very stressful." In fact, it was so stressful that Justine revealed to the foster mother that Justine started "smoking weed" to cope with the situation. The DHS also learned Justine had exposed the children to a friend who was charged with predatory sexual contact with a minor in Illinois. The FSRP (family safety, risk, and permanency) worker explained, "[W]here she's been fully supervised and when people are there Justine seems to do a good job, but as the level of supervision decreases, that's when issues arise of people being there who shouldn't be." The DHS returned Justine to supervised visitation in mid-June 2017.

Justine struggled with her mental health, having been diagnosed with a bipolar disorder, ADHD, and anxiety. During the pendency of the case, she did not consistently manage her medication or individual counseling needs. She continued to swear at the children and threaten them with physical punishment, even in the presence of the FSRP worker.

The State filed a petition to terminate parental rights in early January 2017. At permanency hearings in March and May, the juvenile court decided to allow Justine more time to reunify with the children. But after the DHS reinstituted supervised visitation, the juvenile court held a trial on the petition to terminate parental rights. At the September trial, the children had been out of Justine's care just shy of two years. On November 1, 2017 the court issued its termination ruling, which Justine challenges here.

## II. Analysis of Justine's Claims

Justine's petition on appeal raises three issues. First, she contends the State failed to offer clear and convincing evidence in support of termination under Iowa Code section 232.116(1)(f) and (h). Within that issue she asserts the DHS

failed to make reasonable efforts to reunify her with the children as required by section 232.102(7). Second, she claims termination is not in the children's best interests. Iowa Code § 232.116(2). Third, she argues the closeness of the parent-child relationship weighs against termination. *Id.* § 232.116(3)(c). We will address each claim.

### A. Statutory Grounds/Reasonable Efforts

"The first step in our analysis is to determine if a ground for termination exists under section 232.116(1)." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). To terminate Justine's parental rights, the juvenile court relied on paragraph (f)[3] for the older children, M.B. and A.B., and paragraph (h)[4] for the younger child, A.T. We find clear and convincing evidence in the record to support the order under paragraphs (f) and (h).

Justine argues the DHS did not make reasonable efforts, as defined in section 232.102(7), to reunite her with the three children because the progression of her visitation was "unreasonably delayed." She also asserts that if her use of "inappropriate language" around the children was truly a safety concern, it should have been identified earlier in the case plan.

---

[3] That provision requires proof of four elements: (1) the child is four years old or older; (2) the child has been adjudicated to be a CINA; (3) the child has been removed from the parent's physical custody for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period in the home has been less than thirty days; and (4) clear and convincing evidence exists that at the present time the child cannot be returned to the custody of her parents as provided in section 232.102.

[4] That provision also requires proof of four elements: (1) the child is three years old or younger; (2) the child has been adjudicated to be a CINA; (3) the child has been out of the parent's custody for at least six of the last twelve months or the last six consecutive months and any trial period in the home has been less than thirty days; and (4) clear and convincing evidence exists that the child cannot be returned to the custody of her parents as provided in section 232.102 at the present time.

Justine's contentions are not borne out by the record. A report from the guardian ad litem (GAL) dated August 2016 noted Justine's frustration and anger with the children had been an ongoing concern for social workers. In a November 2016 report, the GAL expressed her view that Justine did not "seem able to care for and manage the children on a regular basis by herself." In her March 2017 report, the GAL told the court that Justine had not made any "lasting change" and was "repeating the same patterns despite many years of services." The DHS worked with Justine in early 2017 to lessen the supervision of her visitations, but Justine did not rise to the occasion. The experience of caring for all three children at once proved too stressful for her. She continued the risky practice of exposing these vulnerable children to individuals not approved by the DHS. The State offered clear and convincing evidence the children could not be safely returned to Justine's care.

### B. Best Interests

"The second step in the analysis is to consider the factors under section 232.116(2)." *P.L.*, 778 N.W.2d at 40. This best-interests provision requires us to give primary consideration to the children's safety, to the best placement for furthering their long-term nurturing and growth, and to their physical, mental, and emotional condition and needs. Iowa Code § 232.116(2).

Because of their early exposure to violence, Justine's children suffer from trauma-related maladies. Justine acknowledged her relationship with Ronald "caused a lot of damage to [her] children." Especially alarming is the impact on the oldest child, M.B. This eight-year-old girl has been diagnosed with and takes medication for depression, anxiety, and childhood PTSD (post-traumatic stress

disorder). Because of her extreme behaviors, M.B. cannot safely live with her younger siblings and has had three different out-of-home placements since she was removed from Justine's care. M.B. was also hospitalized for self-destructive behaviors while in foster care. Her current foster family was not committed to moving toward adoption. A.B. also has demonstrated behavioral problems and has trouble with his temper.

Justine contends the upheaval in M.B.'s life and the uncertainty of her adoption suggests termination was not in the best interests of the children. But the record points to the opposite conclusion. These children are in desperate need of stability after early years of violence and chaos. Despite her sincere efforts, Justine has not shown she can provide for the long-term nurturing and growth or meet the complex emotional needs of her traumatized children. Termination of her parental rights is the necessary first step toward permanency for all three children. *See P.L.*, 778 N.W.2d at 41 (noting the adoptable age of the child and pointing out we cannot delay a termination decision by "hoping someday a parent will learn to be a parent and be able to provide a stable home for the child").

### C. Closeness of Relationship

Finally, Justine argues the juvenile court should have refrained from severing her legal ties with the three children because the record included clear and convincing evidence termination would be detrimental due to the closeness of the parent-child relationship. Iowa Code § 232.116(3)(c). Justine points to her regular visitations and asserts the children will be "harmed by not having her in their lives."

The DHS worker testified the children have a strong bond with Justine and predicted an "emotional impact" from the termination of her parental rights. But the worker also believed the children's need for permanency outweighed the detrimental effect of the termination. After reviewing the record, we conclude the closeness of the parent-child relationship is not cause for declining to terminate Justine's parental rights. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010) (explaining "our consideration must center on whether the [children] will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the children's] developing needs").

**AFFIRMED.**